ASSOCIATED SCAVENGERS, Inc., v. ILLINGSWORTH.

No. 5919. Decided December 27, 1937. (74 P. [2d] 655.)

Rehearing denied February 11, 1938.

*N. H. Tanner* and *J. J. Whitaker,* both of Salt Lake City, for appellant.

*Stephens, Brayton & Lowe* and *Calvin Behle,* all of Salt Lake City, for respondent.

FOLLAND, Chief Justice.

This is a controversy between the lessee or concessionaire of the "City Dumps" and a scavenger who deposits his collection of city waste material on the city dump. Plaintiff alleges that it was and is the lessee of the city dump and that

the defendant was notified by it to "level, burn, destroy or bury waste material and generally care for the garbage hauled and deposited by them on the City Dump"; that defendant failed to so care for "the materials deposited on the City Dumps as provided in the City Ordinance"; and that appellant by reason thereof" was compelled to and did employ laborers to perform the service which the defendant had agreed to do." That between December 31, 1934, and March 1, 1936, plaintiff was compelled to pay and did pay the sum of $450, and thereby the defendant became indebted to the appellant in that sum; that demand for payment had been made and payment refused.

Defendant denied the allegations of the complaint and alleged that the contract of lease between Salt Lake City and plaintiff "was ultra vires in that the said Salt Lake City Corporation was not, and is not, authorized by law to delegate and lease to a private corporation or person the operation and control of said premises and dumping grounds, and is not authorized by law to empower plaintiff as concessionaire with a right to charge for the use of said property and dumping grounds."

The trial court made findings of fact, conclusions of law, and entered judgment for defendant for no cause of action and for costs.

The contract of lease makes a requirement on the lessee, the appellant herein, to do and perform certain things looking to the proper and sanitary maintenance of the dumping grounds and provides that "all material deposited at said dump shall be and become the absolute property of the concessionaire"; except property inadvertently lost or misplaced. The provision of the contract relied on by plaintiff as the basis of its right to charge and collect from defendant is the following:

"The concessionaire shall at all proper times permit the public to use said dumping grounds free of cost; provided however, that the concessionaire with the approval of the Health Commissioner shall have the right to direct the manner and location of depositing any ma-

terial at said dumps, except that the actual cost of destroying or burying waste material required to be destroyed or buried may be charged against the person depositing the same, or he may be required under the direction of the concessionaire to destroy or bury the same by his own efforts and at his own expense."

Appellant argues the following three assignments of error: (1) That the court erred in finding that the waste material deposited on the dump by defendant "consists wholly or practically so of waste paper and trash deposits readily burned and in no way detrimental to the public health as deposited on the said premises." (2) That the court erred in its conclusion of law that "there was no necessity for the burning or destruction of such deposits by the defendant to protect the public health." (3) That the court erred in the conclusion that "the defendant was under no obligation to pay plaintiff handling charges for the deposits made on said dump by defendant."

This is a law case, and if there is any substantial competent evidence in the record which supports the court's findings of fact, then such findings cannot be disturbed.

It is apparent from a reading of the evidence that defendant did not collect and dump on the premises in question garbage as that word is defined in the city ordinance, that is: "Swill and all animal, vegetable, and food refuse from kitchens, residences, hotels, cafes, restaurants, and places where food is prepared for human consumption." Certain of the witnesses used the word "garbage" to designate parts of the contents of the defendant's loads. Garbage, as defined, is used to feed hogs. The city dump, leased to plaintiff, was not intended as a dumping ground for such material, but rather for market waste, trade waste, and other waste material. The record shows that defendant dumped six loads of material per day six days a week, and this was mostly dry waste material; that the "garbage" he collected went to the "pig men" for the feeding of pigs.

There was some conflict in the evidence, but the trial judge, who heard the witnesses and also visited and inspected the dump, was in a much better position to interpret the facts than is this court. We cannot disturb his finding that the materials dumped by defendant were wholly, or practically so, trash deposits and in no way detrimental to public health.

The second assignment attacks a conclusion of law that there was no necessity of burning defendant's deposits in the interest of public health. There may seem to be an inconsistency between the findings that all defendant's loads were burnable and the conclusion that it was not ■ necessary to the public health that such be burned. However, the inconsistency is more apparent than real. The evidence discloses that practically all of the defendant's waste material was destroyed by fire. The small amount of wet material was also burned, leaving only ashes and cans and other non-combustible materials. These were not detrimental to public health.

Plaintiff kept two men at the dump, one at night and the other during the day. They raked over the dump to salvage bottles, sacks, and other materials that might be sold, after which they set fire to the remaining material. There was no evidence that defendant carried any dead animals or deleterious matter to the dump. The conclusion complained of naturally follows from the finding as to the kind of material dumped by defendant. We find no error therein.

The third assignment is directed to the conclusion of law that defendant was under no obligation to pay to plaintiff handling charges made for the deposits by him on the dump. This conclusion follows also from the finding of the character of the material dumped by defendant and ■ the provisions of the city ordinance. Defendant was a licensed scavenger paying $50 a year license fee. The city ordinance provides that the board of health may designate the place for the burning of trash and other dry waste. Such designated place was the "city dump." The conclusion is further supported by the fact that defendant through his

drivers asked permission to take care of the materials deposited by him on the dump but was denied this right, according to defendant's testimony. There was conflict in the evidence on this point. The court made no finding of fact as to this, but neither party is here complaining of that. The court made no finding as to the amount, if any, paid by the plaintiff to take care of loads dumped by defendant. Some finding in that respect would be necessary to support a judgment for plaintiff in any amount. The testimony in that respect submitted by plaintiff was so vacillating and uncertain that we cannot say that an affirmative finding in some amount is compelled by the evidence. However, appellant does not complain of this in its brief.

There is an assignment of error to the effect that the court erred in not finding and awarding judgment for plaintiff "as there is no evidence that there were no costs incurred by plaintiff in caring for the garbage dumped by defendant and cared for by plaintiff." This assignment ■ was not argued and is therefore waived.

Plaintiff first testified that it employed two men to take care of the dump at a wage of $100 a month each, but it finally developed that no wage was paid but that these men kept and sold the material they salvaged from the dump in full payment for their services on the dump. It further appeared that a tractor was used occasionally to ■ level the dump, but the evidence as to the cost of operation was very unsatisfactory. A member of the city health department testified that the loads could be handled and the dump operated at an estimated cost of 2 cents per load. This defendant was only one of twenty or thirty scavengers who used the dump besides plaintiff. It was also used by many persons not scavengers. The third assignment of error cannot be sustained.

Defendant has argued that the contract between the city and plaintiff is void as (a) a disposal of city property contrary to law, and (b) a delegation of a governmental function contrary to law. The trial court construed the contract

to be a concession instead of a lease. Since this appeal must be decided against appellant on the assignments urged by it, there is no necessity to review these questions.

Finding no error in the record, the judgment of the trial court is affirmed. Costs to respondent.

HANSON, MOFFAT, WOLFE, and LARSON, JJ., concur.